FILED BY _____ D.C.

**Sep 1, 2022**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**22-60193-CR-SINGHAL/DAMIAN**

Case No. _____

18 U.S.C. § 1349
18 U.S.C. § 1347
18 U.S.C. § 371
42 U.S.C. § 1320a-7b(b)(2)(A)
18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982(a)(1)
18 U.S.C. § 982(a)(7)

**UNITED STATES OF AMERICA**

vs.

**MIROSIS GONZALEZ and
BERIOSKA SOSA,**

        **Defendants.**
_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times material to this Indictment:

### The Medicare Program

1.      The Medicare Program (Medicare) was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services (HHS), through its agency, the Centers for Medicare and Medicaid Services (CMS), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2.      Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

3.      Medicare was subdivided into multiple program "parts." Medicare Part A covered health services provided by hospitals, skilled nursing facilities, hospices, and home health agencies. Medicare Part B covered physician services and outpatient care, including an individual's access to durable medical equipment (DME), such as orthotic devices and wheelchairs. Part D of Medicare subsidized the costs of prescription drugs for Medicare beneficiaries in the United States.

## Durable Medical Equipment

4.      Orthotic devices were a type of DME that included rigid and semi-rigid devices, such as knee braces, back braces, shoulder braces, ankle braces, and wrist braces.

5.      DME suppliers, physicians, and other health care providers that provided services to Medicare beneficiaries were referred to as Medicare "providers." To participate in Medicare, providers were required to submit an application, CMS Form 855S, which contained a certification that stated:

> I agree to abide by the Medicare laws, regulations and program instructions that apply to me or to the organization listed in Section 1B of this application. The Medicare laws, regulations, and program instructions are available through the fee-for-service contractor. I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations and program instructions[,] including, but not limited to, the Federal Anti-Kickback Statute, 42 U.S.C. section 1320a-7b(b)[.]

> I will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity.

6.      If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number." A health care provider with a Medicare provider number could file claims with Medicare to obtain reimbursement for services rendered to beneficiaries.

7.      Enrolled Medicare providers agreed to abide by the policies, procedures, rules, and regulations governing reimbursement. To receive Medicare funds, enrolled providers were required to abide by the Federal Anti-Kickback Statute and other laws and regulations.  Providers were given access to Medicare manuals and services bulletins describing billing procedures, rules, and regulations.

8.      Medicare reimbursed DME companies and other health care providers for items and services rendered to beneficiaries. To receive payment from Medicare, providers submitted or caused the submission of claims to Medicare electronically, either directly or through a billing company.

9.      A Medicare claim for DME reimbursement was required to set forth, among other things, the beneficiary's name and unique Medicare identification number, the DME provided to the beneficiary, the date the DME was provided, the cost of the DME, and the name and unique physician identification number of the physician who prescribed or ordered the equipment.

10.      A claim for DME submitted to Medicare qualified for reimbursement only if it was medically necessary for the treatment of the beneficiary's illness or injury and prescribed by a licensed medical professional.

### Prescription Drugs

11.      In order to receive Part D benefits, a beneficiary must be enrolled in a Medicare drug plan. Medicare drug plans were operated by private companies approved by Medicare. Those companies were often referred to as drug plan sponsors. A beneficiary in a Medicare drug

plan could fill a prescription at a pharmacy and use his or her plan to pay for some or all of the prescription.

12.     A pharmacy could participate in Part D by entering a retail network agreement with one or more Pharmacy Benefit Managers (PBM's).  Each PBM acted on behalf of one or more Medicare drug plans. Through a plan's PBM, a pharmacy could join the plan's network. When a Part D beneficiary presented a prescription to a pharmacy, the pharmacy submitted a claim to the PBM that represented the beneficiary's Medicare drug plan. The plan or PBM determined whether the pharmacy was entitled to payment for each claim and periodically paid the pharmacy for outstanding claims. The drug plan's sponsor reimbursed the PBM for its payments to the pharmacy.

13.     To obtain payment from a PBM for a claim, pharmacies typically submitted claims electronically via the internet. The claim required certain important information, including: (a) the beneficiary's name and Health Insurance Claim Number (HICN) or other Medicare identification number; (b) a description of the health care benefit, item, or service that was provided or supplied to the beneficiary; (c) the billing codes for the benefit, item, or service; (d) the date upon which the benefit, item, or service was provided or supplied to the beneficiary; and (e) the name of the referring physician or other health care provider, as well as a unique identifying number, known either as the Unique Physician Identification Number (UPIN) or National Provider Identifier (NPI).

14.     When a pharmacy submitted a claim to a PBM, the pharmacy certified that the contents of the claim were true, correct, complete, and that the claim was prepared in compliance with the laws and regulations governing the Medicare program. The submitting pharmacy also certified that the prescription drugs being billed were prescribed and were in fact provided as

4

billed.

15.     Medicare and Medicare drug plan sponsors were "health care benefit program[s],"
as defined by Title 18, United States Code, Section 24(b).

### Telemedicine

16.     Telemedicine provided a means of connecting patients to doctors by using
telecommunications technology, such as the internet or telephone, to interact with a patient.

17.     Telemedicine companies provided telemedicine services, or telehealth services, to
individuals by hiring doctors or other health care providers. Telemedicine companies typically
paid doctors a fee to conduct consultations with patients. In order to generate revenue, telemedicine
companies typically either billed insurance or received payment from patients who utilized the
services of the telemedicine company.

18.     Medicare Part B covered expenses for specific telehealth services if certain
requirements were met.  These requirements included that (a) the beneficiary was located in a rural
or health professional shortage area; (b) services were delivered via an interactive audio and video
telecommunications system; and (c) the beneficiary was in a practitioner's office or a specified
medical facility—not at a beneficiary's home—during the telehealth service with a remote
practitioner. In or around March 2020, in response to the COVID-19 pandemic, some of these
requirements were amended temporarily to, among other things, cover telehealth services for
certain office and hospital visits, even if the beneficiary was not located in a rural area or a health
professional shortage area and even if the telehealth services were furnished to beneficiaries in
their home.

### The Defendants and Related Entities

19.     Aviva Care Pharmacy, d/b/a American Care Pharmacy ("Aviva Care Pharmacy"),

was a Florida corporation located in Sunrise, Florida, that did business in Broward County purportedly providing DME and prescription drugs to Medicare beneficiaries.

20.     Defendant **MIROSIS GONZALEZ,** a resident of Palm Beach County, was the President and Registered Agent of Aviva Care Pharmacy.

21.     Defendant **BERIOSKA SOSA,** a resident of Broward County, was the Manager of Aviva Care Pharmacy.

22.     Company 1 was a Florida company located in Orlando, Florida, that purported to provide marketing services to clients.

23.     Company 2 was a Florida company located in Boca Raton, Florida, that purported to provide marketing and telehealth services to clients.

24.     Company 3 was a Florida company located in Coral Springs, Florida, that purported to provide telemarketing services to clients.

25.     Company 4 was a Florida company located in Parkland, Florida, that purported to provide management services to health care companies.

26.     Company 5 was a Florida company located in Longwood, Florida, that purported to provide marketing services to clients.

27.     Company 6 was a Florida company located in Ft. Lauderdale, Florida, that purported to provide marketing and telehealth services to clients.

28.     Company 7 was a Florida company located in Miami, Florida, that purported to provided management services to health care companies.

6

## COUNT 1
### Conspiracy to Commit Health Care Fraud and Wire Fraud
### (18 U.S.C. § 1349)

1.      The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.      From in or around August 2016, and continuing through in or around May 2020, in Broward County, in the Southern District of Florida, and elsewhere, the defendants,

**MIROSIS GONZALEZ and
BERIOSKA SOSA,**

did knowingly and willfully, that is, with the intent to further the objects of the conspiracy, combine, conspire, confederate, and agree with each other, and with others known and unknown to the Grand Jury, to commit offenses against the United States, that is:

  a.      to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347; and

  b.      to knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

## Purpose of the Conspiracy

3.      It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things: (a) offering and paying kickbacks and bribes to patient recruiters in exchange for the referral of Medicare beneficiaries and doctors' orders for DME and prescription drugs to Aviva Care Pharmacy; (b) offering and paying kickbacks and bribes to telemedicine companies in exchange for ordering and arranging for the ordering of DME and prescription drugs for Medicare beneficiaries, without regard to whether the DME or prescription drugs were medically necessary or eligible for Medicare reimbursement; (c) submitting and causing the submission, via interstate wire communication, of false and fraudulent claims to Medicare for DME and prescription drugs that were not medically necessary and not eligible for Medicare reimbursement; (d) concealing and causing the concealment of false and fraudulent claims to Medicare; and (e) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the conspiracy.

## Manner and Means of the Conspiracy

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things:

4.      **MIROSIS GONZALEZ, BERIOSKA SOSA**, and others paid kickbacks and bribes to patient recruiters, through Companies 1-7 among others, in exchange for referring beneficiaries and doctors' orders for prescription drugs and/or DME to Aviva Care Pharmacy.

5.      **MIROSIS GONZALEZ, BERIOSKA SOSA**, and others, through and on behalf of Aviva Care Pharmacy, negotiated the kickback and bribe arrangements, and disguised the true nature and source of these kickbacks and bribes as being for other purported services, such as

"marketing" or "call center management" services, and further concealed such payments by entering into sham contracts.

6.      **MIROSIS GONZALEZ, BERIOSKA SOSA**, and others, through and on behalf of Aviva Care Pharmacy, offered and paid illegal kickbacks and bribes to telemedicine companies in exchange for doctors' orders for DME and prescription drugs that were not medically necessary and not eligible for Medicare reimbursement. These doctors' orders were written by doctors who had contracted with the telemedicine companies and did not have pre-existing doctor-patient relationships with the beneficiaries, were not treating the beneficiaries, did not conduct physical examinations, and did not conduct proper telemedicine visits.

7.      **MIROSIS GONZALEZ, BERIOSKA SOSA**, and others submitted, and caused the submission of, false and fraudulent claims to Medicare, through the use of interstate wire communications, on behalf of Aviva Care Pharmacy, totaling approximately $12,172,701, for DME and prescription drugs that were procured through kickbacks and bribes, not medically necessary, and not eligible for reimbursement. As a result of these false and fraudulent claims, Aviva Care Pharmacy received payment in the approximate amount of $8,456,406.

8.      **MIROSIS GONZALEZ, BERIOSKA SOSA**, and others used the fraud proceeds to benefit themselves and others, and to further the fraud.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2–13
### Health Care Fraud
### (18 U.S.C. § 1347)

1.      The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.      From in or around August 2016, and continuing through in or around May 2020, in Broward County, in the Southern District of Florida, and elsewhere, the defendants,

**MIROSIS GONZALEZ and**
**BERIOSKA SOSA,**

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said healthcare benefit program.

## Purpose of the Scheme and Artifice

3.      It was a purpose of the conspiracy for the defendants and their accomplices to unlawfully enrich themselves by, among other things: (a) offering and paying kickbacks and bribes to patient recruiters in exchange for the referral of Medicare beneficiaries and doctors' orders for DME and prescription drugs to Aviva Care Pharmacy; (b) offering and paying kickbacks and bribes to telemedicine companies in exchange for ordering and arranging for the ordering of DME and prescription drugs for Medicare beneficiaries, without regard to whether the DME or prescription drugs were medically necessary or eligible for Medicare reimbursement; (c) submitting and causing the submission, via interstate wire communication, of false and fraudulent claims to Medicare for DME and prescription drugs that were not medically necessary and not eligible for Medicare reimbursement; (d) concealing and causing the concealment of false and fraudulent claims to Medicare; and (e) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the scheme.

10

**The Scheme and Artifice**

4.      The Manner and Means section of Count 1 of this Indictment is re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

**Acts in Execution or Attempted Execution
of the Scheme and Artifice**

5.      On or about the dates set forth as to each count below, in Broward County, in the Southern District of Florida, and elsewhere, the defendants did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program, in that the defendants submitted and caused the submission of false and fraudulent claims, seeking the identified dollar amounts, and representing that such benefits, items, and services were medically necessary and eligible for Medicare reimbursement:

| Count | Beneficiary | Claim Number | Approx. Date of Service | Product | Total Approx. Amount Billed |
|-------|-------------|--------------|-------------------------|---------|------------------------------|
| 2  | G.F. | 118101714502000 | 04/10/2018 | Lumbar-sacral orthosis | $1,400.00 |
| 3  | T. B. | 118115715451000 | 04/24/2018 | Knee orthosis | $1,100.00 |
| 4  | C. M. | 118159708957000 | 06/07/2018 | Lumbar-sacral orthosis | $1,400.00 |
| 5  | M.G. | 118291704761000 | 10/15/2018 | Shoulder elbow wrist hand orthosis | $724.06 |
| 6  | R.R. | 88781063004 | 10/19/2019 | Vancomycin Cap 250mg | $3,240.50 |
| 7  | B.H. | 88780626696 | 10/23/2019 | Vancomycin Cap 250mg | $3,240.50 |
| 8  | J.L. | 89861448537 | 12/06/2019 | Vancomycin Cap 250mg | $1,197.50 |
| 9  | E.P. | 90248644407 | 12/17/2019 | Econazole Cre1% | $2,097.50 |
| 10 | N.A. | 91917178871 | 12/19/2019 | Vancomycin Cap 250mg | $8,498.03 |

| Count | Beneficiary | Claim Number | Approx. Date of Service | Product | Total Approx. Amount Billed |
|-------|-------------|--------------|-------------------------|---------|------------------------------|
| 11 | I.R. | 91037057393 | 01/17/2020 | Vancomycin Cap 250mg | $1,197.50 |
| 12 | D.R. | 91419478678 | 02/12/2020 | Vancomycin Cap 250mg | $887.90 |
| 13 | B.K. | 92166258834 | 03/09/2020 | Econazole Cre1% | $774.50 |

In violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT 14
### Conspiracy to Pay Health Care Kickbacks
### (18 U.S.C. § 371)

1.      The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.      From in or around August 2016, and continuing through in or around May 2020, in Broward County, in the Southern District of Florida, and elsewhere, the defendants,

**MIROSIS GONZALEZ and
BERIOSKA SOSA,**

did knowingly and willfully, that is, with the intent to further the object of the conspiracy, combine, conspire, confederate, and agree with each other, and with others known and unknown to the Grand Jury, to commit an offense against the United States, that is, to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A), by knowingly and willfully offering and paying remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to a person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of an item and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare.

**Purpose of the Conspiracy**

3.      It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things: (a) offering and paying kickbacks and bribes for the referral of Medicare beneficiaries and doctors' orders for DME and prescription drugs to Aviva Care Pharmacy; (b) offering and paying kickbacks and bribes to telemedicine companies in exchange for ordering and arranging for the ordering of DME and prescription drugs for Medicare beneficiaries; (c) submitting and causing the submission of claims to Medicare through Aviva Care Pharmacy for DME and medication that was obtained through the payment of kickbacks and bribes; (e) concealing and causing the concealment of the kickbacks and bribes; and (f) diverting proceeds from the conspiracy for their personal use and benefit, the use and benefit of others, and to further the conspiracy.

**Manner and Means of the Conspiracy**

The manner and means by which the defendants and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things, the following:

4.      **MIROSIS GONZALES, BERIOSKA SOSA**, and others, through and on behalf of Aviva Care Pharmacy, paid and caused to be paid kickbacks and bribes to patient recruiters, through Companies 1-7 and others, in exchange for referring Medicare beneficiaries and doctors' orders for DME and prescription drugs to Aviva Care Pharmacy.

5.      **MIROSIS GONZALEZ, BERIOSKA SOSA**, and others, on behalf of Aviva Care Pharmacy, negotiated the kickback and bribe arrangements, and disguised the nature and source of these kickbacks and bribes as being for other services, such as "marketing" services, and further concealing such payments by entering into sham contracts.

6.    **MIROSIS GONZALEZ, BERIOSKA SOSA,** and others submitted, and caused the submission of, claims to Medicare for DME and prescription drugs totaling approximately $12,172,701. As a result of these claims, Aviva Care Pharmacy received payment in the approximate amount of $8,456,406.

7.    **MIROSIS GONZALEZ, BERIOSKA SOSA**, and others used the proceeds of the conspiracy to benefit themselves and others, and to further the conspiracy.

### Overt Acts

In furtherance of the conspiracy, and to accomplish its object and purpose, at least one co-conspirator committed and caused to be committed, in the Southern District of Florida, at least one of the following overt acts, among others:

1.    On or about May 17, 2017, **BERIOSKA SOSA** executed a Business Processing and Outsourcing Agreement between Aviva Care Pharmacy and Company 1, which falsely represented that Company 1 would provide "business process support and call center services," among other services, to Aviva Care Pharmacy.

2.    On or about July 17, 2017, **BERIOSKA SOSA** executed a Marketing Services Agreement between Aviva Care Pharmacy and Company 1, which falsely represented that the compensation "is not in any way related to the value or volume of leads that may become customers of client."

3.    On or about August 2, 2017, **BERIOSKA SOSA** and **MIROSIS GONZALEZ** transferred and caused to be transferred approximately $2,500, via wire transfer, from the Aviva Care Pharmacy Bank of America account ending x7928 to Company 1's bank account as a kickback for the referral of Medicare beneficiaries and their doctors' orders.

4.      On or about August 24, 2017, **BERIOSKA SOSA** and **MIROSIS GONZALEZ** transferred and caused to be transferred approximately $2,500, via wire transfer, from the Aviva Care Pharmacy Bank of America account ending x7928 to Company 1's bank account as a kickback for the referral of Medicare beneficiaries and their doctors' orders.

5.      On or about June 8, 2018, **BERIOSKA SOSA** transferred and caused to be transferred approximately $15,000, via wire transfer, from the Aviva Care Pharmacy Bank of America Account ending x6770 to Company 2's bank account as a kickback for the referral of Medicare beneficiaries and their doctors' orders.

6.      On or about July 30, 2018, **MIROSIS GONZALEZ** executed a Call Center Services and Outsourcing BPO Agreement as well as a Business Associate Agreement between Aviva Care Pharmacy and Company 2, which falsely represented that Company 2 would provide "call center and other BPO outsourcing services" to Aviva Care Pharmacy. The agreement also falsely represented that the rate was a "flat rate equal to $25 per hour for a minimum of 200 hours a week or $5,000."

7.      On or about September 24, 2018, **MIROSIS GONZALEZ** executed a Marketing Services Agreement between Aviva Care Pharmacy and Company 3, which falsely represented that Company 3 would provide "a specialty marketing program to generate and deliver raw leads" to Aviva Care Pharmacy.

8.      On or about October 1, 2018, **BERIOSKA SOSA** and **MIROSIS GONZALEZ** transferred and caused to be transferred approximately $10,000, via wire transfer, from the Aviva Care Pharmacy Bank of America account ending x6770 to Company 2's bank account as a kickback for the referral of Medicare beneficiaries and their doctors' orders.

9.      On or about November 5, 2018, **BERIOSKA SOSA** and **MIROSIS GONZALEZ** transferred and caused to be transferred approximately $2,500, via wire transfer, from the Aviva Care Pharmacy Bank of America account ending x6770 to Company 4's bank account as a kickback for the referral of Medicare beneficiaries and their doctors' orders.

10.     On or about January 3, 2020, **BERIOSKA SOSA** and **MIROSIS GONZALEZ** transferred and caused to be transferred approximately $6,000, via wire transfer, from the Aviva Care Pharmacy PNC account ending x8623 to Company 5's bank account as a kickback for the referral of Medicare beneficiaries and their doctors' orders.

All in violation of Title 18, United States Code, Section 371.

### COUNTS 15-18
**Payment of Kickbacks in Connection with a Federal Health Care Program**
**(42 U.S.C. § 1320a-7b(b)(2)(A))**

1.      The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates enumerated below, in Broward County, in the Southern District of Florida, and elsewhere, the defendants,

**MIROSIS GONZALEZ and**
**BERIOSKA SOSA,**

did knowingly and willfully offer and pay remuneration, that is, kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, as set forth below, to a person, to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of an item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare:

16

| Count | Approx. Date of Kickback Payment | Approx. Amt. of Kickback Payment | Description of Kickback Payment |
|---|---|---|---|
| 15 | 06/08/2018 | $15,000 | Wire transfer from the Aviva Care bank account to the Company 2 bank account |
| 16 | 10/01/2018 | $10,000 | Wire transfer from the Aviva Care bank account to the Company 2 bank account |
| 17 | 11/05/2018 | $2,500 | Wire transfer from the Aviva Care bank account to the Company 4 bank account |
| 18 | 01/03/2020 | $6,000 | Wire transfer from the Aviva Care bank account to the Company 5 bank account |

In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A) and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATIONS

1.     The allegations of this Indictment are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of certain property in which the defendant so convicted has an interest.

2.     Upon conviction of a conspiracy to commit a violation of Title 18, United States Code, Section 1343, as alleged in this Indictment, the defendant so convicted shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

3.     Upon conviction of a violation, or conspiracy to commit a violation, of Title 18, United States Code, Section 1347, or Title 42, United States Code, Section 1320a-7b, as alleged in this Indictment, the defendant so convicted shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses, pursuant to Title 18, United States Code, Section 982(a)(7).

4.     The property subject to forfeiture as a result of the alleged offenses includes, but is not limited to, a sum of at least $8,456,406, which represents the total amount of funds involved

in or derived from the alleged offenses and may be sought as a forfeiture money judgment.

5.      If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

      a.  cannot be located upon the exercise of due diligence;

      b.  has been transferred or sold to, or deposited with, a third party;

      c.  has been placed beyond the jurisdiction of the court;

      d.  has been substantially diminished in value; or

      e.  has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

[THIS SPACE INTENTIONALLY BLANK]

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Sections 982(a)(1) and (a)(7) and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

GRAND JURY FOREPERSON

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

CHRISTOPHER J. CLARK
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

MIROSIS GONZALEZ
and BERIOSKA SOSA,
_____/
Defendants.

CASE NO.:

**CERTIFICATE OF TRIAL ATTORNEY\***

**Superseding Case Information:**

New Defendant(s) (Yes or No)
Number of New Defendants
Total number of New Counts

**Court Division** (select one)
- ☐ Miami    ☐ Key West    ☐ FTP
- ☑ FTL      ☐ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.

3. Interpreter: (Yes or No) Yes
   List language and/or dialect: Spanish

4. This case will take   14   days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                    (Check only one)
   I    ☐ 0 to  5 days                 ☐ Petty
   II   ☐ 6 to 10 days                 ☐ Minor
   III  ☑ 11 to 20 days                ☐ Misdemeanor
   IV   ☐ 21 to 60 days                ☑ Felony
   V    ☐ 61 days and over

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge                          Case No.

7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Magistrate Case No.

8. Does this case relate to a previously filed matter in this District Court? (Yes or No) No
   If yes, Judge                          Case No.

9. Defendant(s) in federal custody as of

10. Defendant(s) in state custody as of

11. Rule 20 from the                      District of

12. Is this a potential death penalty case? (Yes or No) No

13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No

14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No

By:   _____
      Christopher J. Clark
      Assistant United States Attorney
      FLA Bar No.   588040

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name:** MIROSIS GONZALEZ

**Case No:**

Count #: 1

Conspiracy to Commit Health Care Fraud and Wire Fraud

Title 18, United States Code, Section 1349
* **Max. Term of Imprisonment: Twenty (20) Years**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: Three (3) Years**
* **Max. Fine: $250,000**

Counts #: 2-13

Health Care Fraud

Title 18, United States Code, Section 1347
* **Max. Term of Imprisonment: Ten (10) Years per count**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: Three (3) Years**
* **Max. Fine: $250,000**

Count #: 14

Conspiracy to Defraud the United States and to Pay Health Care Kickbacks

Title 18, United States Code, Section 371
* **Max. Term of Imprisonment: Five (5) Years**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: Three (3) Years**
* **Max. Fine: $250,000**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include
restitution, special assessments, parole terms, or forfeitures that may be applicable.**

Penalty Sheet page 2

PENALTY SHEET

**Defendant's Name:**   MIROSIS GONZALEZ _____

**Case No:** _____

Counts #: 15-18

Payment of Kickbacks in Connection with a Federal Health Care Program _____

Title 42, United States Code, Section 1320a-7b(b)(2)(A) _____
* **Max. Term of Imprisonment: Ten (10) Years per count**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: Three (3) Years**
* **Max. Fine: $100,000**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include
restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name:**   BERISOKA SOSA

**Case No:**

Count #: 1

Conspiracy to Commit Health Care Fraud and Wire Fraud

Title 18, United States Code, Section 1349
* **Max. Term of Imprisonment: Twenty (20) Years**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: Three (3) Years**
* **Max. Fine: $250,000**

Counts #: 2-13

Health Care Fraud

Title 18, United States Code, Section 1347
* **Max. Term of Imprisonment: Ten (10) Years per count**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: Three (3) Years**
* **Max. Fine: $250,000**

Count #: 14

Conspiracy to Defraud the United States and to Pay Health Care Kickbacks

Title 18, United States Code, Section 371
* **Max. Term of Imprisonment: Five (5) Years**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: Three (3) Years**
* **Max. Fine: $250,000**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

Penalty Sheet page 2

## PENALTY SHEET

**Defendant's Name:**   BERIOSKA SOSA

**Case No:**

Counts #: 15-18

Payment of Kickbacks in Connection with a Federal Health Care Program

Title 42, United States Code, Section 1320a-7b(b)(2)(A)
**\* Max. Term of Imprisonment: Ten (10) Years per count**
**\* Mandatory Min. Term of Imprisonment (if applicable): N/A**
**\* Max. Supervised Release: Three (3) Years**
**\* Max. Fine: $100,000**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**